[Civ. No. 16021.   First Dist., Div. Two.   Dec. 3, 1954.]

JAMES HALSTEAD, Appellant, v. LEROY FRANK PAUL, Respondent.

Taheny & Taheny for Appellant.

Healy & Walcom for Respondent.

DOOLING, J.—This is an appeal from a judgment of nonsuit in a personal injury action based on Vehicle Code, section 403 (guest statute).

Appellant Halstead, a metal worker living in Redwood City at the time of the accident, arranged to go sea fishing with a Mr. Merryman, a Mr. Abbott and Mr. Paul, the

respondent. They set off for Princeton from Redwood City in Paul's automobile at 5 a. m. and boarded a fishing boat about 6:30 a. m. They remained aboard until approximately 3 p. m. Paul became seasick but upon returning to shore felt sufficiently recovered to drive home even though the others offered to drive.

Merryman sat next to Paul, the driver, and Abbott and Halstead sat in the back seat. Abbott went to sleep immediately and after a few miles so did Merryman. They apparently did not awaken until after the accident. The accident occurred on a very straight portion of the road, and it had been so for at least a mile prior to the accident.

The first unusual thing to occur was that the car gradually began veering across the white line to the left-hand side of the road. The left side of the car was approximately 2½ feet to the left of the white line. The automobile remained in this position relative to the sides of the highway for approximately 750 or 800 feet. The speed remained the same during this time.

As the automobile gradually veered back into the proper lane Halstead, sitting on the right side in back, leaned forward to determine if Paul was awake. His right eye was open and looking straight ahead so he leaned back in his seat again. He then asked him if he was getting sleepy, but received no answer from Paul.

The automobile proceeded another 420 feet in the proper lane and then abruptly turned to the left. Halstead just had time to shout "look out" and immediately thereafter the automobile went over the bank next to the left-hand side of the road and Halstead was injured.

The driver, Paul, testified that he had gone to a party the night before and did not get to bed until 3 a. m. He arose one hour later and drove to Redwood City in order to pick up Halstead and the others. That was all the sleep he had from Saturday morning until the time of the accident Sunday afternoon. He was unable to explain the cause of the accident and admitted that he must have dozed just before he went over the bank. However he denied having dozed at the wheel at any time prior to the accident.

At the conclusion of the presentation of the plaintiff's case defendant moved for and the trial court granted a nonsuit.

It has been held in *Erickson* v. *Vogt,* 27 Cal.App.2d 77 [80 P.2d 533], and *Pennix* v. *Winton,* 61 Cal.App.2d 761, 764-765 [143 P.2d 940, 145 P.2d 561], that where a driver goes

to sleep at the wheel of an automobile and after awaking continues to drive and has an accident because of falling asleep a second time it is a question of fact for the jury whether the driver was guilty of wilful misconduct in continuing to drive after once having fallen asleep.

The only question presented on this appeal is whether the circumstantial evidence was such that the jury might reasonably have drawn the inference therefrom that when respondent's car passed over the center of the road the first time he had fallen asleep. Here, to review the facts, we have a driver who after only one hour's sleep arises at 4 a. m., drives his car to the coast, goes fishing on the sea from 6:30 a. m. to 3 p. m., becomes seasick, and while driving his car thereafter on a straight, open road goes across the center line and continues in that position for 750 to 800 feet. From these facts plus the additional fact that only a short time thereafter he admittedly fell asleep and drove off the highway we are satisfied that the jury might reasonably have drawn the inference that when he previously crossed the center of the highway he had also fallen asleep.

The inferences to be drawn from circumstantial evidence are for the jury's determination and if conflicting inferences may reasonably be drawn from the evidence which inference is to be drawn lies in the jury's discretion. (*Hamilton* v. *Pacific Elec. Ry. Co.*, 12 Cal.2d 598, 602-603 [86 P.2d 829]; *Mah See* v. *North American Acc. Ins. Co.*, 190 Cal. 421, 426 [213 P. 42, 26 A.L.R. 123]; *Sanders* v. *MacFarlane's Candies*, 119 Cal.App.2d 497, 500 [259 P.2d 1010]; *Spolter* v. *Four-Wheel Brake Serv. Co.*, 99 Cal.App.2d 690, 694 [222 P.2d 307].)    It is equally true that a reasonable inference drawn from circumstantial evidence may be believed as against direct evidence to the contrary. (*Scott* v. *Burke*, 39 Cal.2d 388, 398 [247 P.2d 313]; *Gray* v. *Southern Pac. Co.*, 23 Cal.2d 632, 640-641 [145 P.2d 561]; *Barham* v. *Widing*, 210 Cal. 206, 215 [291 P. 173].)

We conclude that the trial court erred in taking the case from the jury.

Judgment reversed.

Nourse, P. J., and Kaufman, J., concurred.

